1998 SD 122

**STATE of South Dakota, Plaintiff and Appellant,**

v.

**Victoria Lee MEYER, Defendant and Appellee.**

No. 20441.

Supreme Court of South Dakota.

Argued Oct. 22,1998.

Decided Dec. 16, 1998.

Mark Barnett, Atty. Gen., Sherri Sundem Wald, Asst Atty. Gen., Pierre, for plaintiff and appellant.

Thomas M. Tobin of Tonner, Tobin and King, Aberdeen, for defendant and appellee.

GILBERTSON, Justice

[¶ 1.] Victoria Meyer (Victoria) is charged with possession of methamphetamine and less than one-half pound of marijuana. The charges were the product of a warrantless search of her home followed by a search pursuit to a search warrant. Victoria filed a motion with the trial court to suppress the evidence. The Fifth Judicial Circuit, Brown County, granted her motion to suppress. The State appeals. We affirm.

## FACTS AND PROCEDURE

[¶ 2.] On May 19, 1997, the Brown County Sheriff's Department, the South Dakota Division of Criminal Investigation (DCI), the Aberdeen Police Department and the South Dakota Highway Patrol were working jointly to serve eleven drug indictment arrest warrants. Three officers were assigned the task of locating and arresting Robert Kuntz (Kuntz): Brown County Deputy Sheriff Bryan Locke (Locke), Trooper Steve Marquardt (Marquardt) and Trooper Richard Pederson (Pederson).

[¶ 3.] The indictment indicated the officers could "possibly" find Kuntz at 502 North Congress in Aberdeen. This was the home of Kuntz' ex-girlfriend, Victoria. With Kuntz' arrest warrant in hand, they proceeded to 502 North Congress with the purpose of finding and arresting Kuntz. None of the officers did any preliminary work to verify whether Kuntz might be present at Victoria's house. They did not stake out the home or check the license plates on any of the vehicles present or attempt to obtain a search warrant for the home.

[¶ 4.] The officers arrived at the address at approximately 10:30 am. They noted two cars in the area, one they believed belonged to Victoria and the other unknown. Pederson went to the rear of the home to prevent any escape through the back door. Marquardt and Locke approached the front of the home. The house on 502 North Congress is described as having an exterior door leading to an enclosed porch area. From the enclosed porch there was another door leading into the interior of house.

[¶ 5.] Locke found the exterior door locked. He proceeded to knock on that door. A man identified by Locke as Chad Coreau (Coreau) opened the interior door slightly. When Locke asked Coreau if he was the owner of the house, he replied no. Then Locke asked Coreau if Victoria was home and he replied no. The officers did not ask if Kuntz was present.

[¶ 6.] Locke had recognized Coreau and knew he had an outstanding bench warrant for a DUI and another for driving under a suspended license. Locke indicated he wanted to talk to Coreau. Coreau replied he could go ahead and talk. Locke told Coreau he was under arrest and should come outside. Coreau refused to do so. The officers forced the porch door open, grabbed Coreau before he could close the interior door and physically removed him from the house. They moved him to the porch area and handcuffed him with no resistance on his part. At that time a springer spaniel interfered with the officers. They maced the dog. They radioed for Pederson to come to the front of the house.

[¶ 7.] Locke asked Coreau if anyone else was in the house. Coreau said no. Locke indicated he thought Coreau was lying because he had not been truthful about anything else. Locke indicated he thought Victoria was in the house somewhere. Locke and Marquardt re-entered the home with Coreau to do a protective sweep of the home.[1] Locke began to look around while

---

1. Officer Locke's testimony describes why the officers re-entered the home.

Q: [What about] ... the second time that you went into the home?

\* \* \*

A: Then we go into the home.

Q: Yes.

Marquardt stayed in the living room to guard Coreau.

[¶ 8.] Back inside the house Locke found Victoria. She was in the bedroom, sitting up in bed with a blanket wrapped around her. He asked her to come out into the living room. She replied that she was not wearing any clothes. Locke told her to wrap the blanket around herself and come into the living room. She came into the living room and sat on the couch. Locke asked her if this was her house. She told the officer she was in the process of buying the home. He did not ask her if Kuntz was there.

[¶ 9.] After they brought Victoria into the living room, Marquardt saw two marijuana pipes sitting on a television stand. Victoria was placed under arrest for possession of drug paraphernalia. Locke then called Agent Satterlee with the DCI, to obtain a search warrant for Victoria's house.

[¶ 10.] Victoria and Coreau were sent to Brown County Jail while officers waited at the house for the search warrant to be drawn up by the DCI. When the search warrant arrived, officers again searched the home and uncovered snort straws, needles and methamphetamine.

[¶ 11.] Prior to the discovery of the marijuana pipes, officers did not have a search warrant for Victoria's home. Victoria did not consent to the presence of law enforcement in her home. At no time did the law enforcement officers ever ask Victoria or Coreau about the whereabouts of Kuntz. The officers never established with Coreau or with Victoria if Coreau was living in the home.

[¶ 12.] Victoria was charged with possession of methamphetamine and less than one-half pound of marijuana. She moved to suppress the evidence and statements obtained as a result of this search. A hearing was held before the circuit court and the motion to suppress the evidence was granted.

[¶ 13.] At the suppression hearing, the trial court found the officers did not have an arrest warrant for Victoria or a search warrant for her home. There was also a lack of

consent or exigent circumstances to justify entry into the home. Absent these exceptions, the only means by which the evidence could be used against Victoria would be if the State met its burden of proof showing that: the officers had an arrest warrant for Coreau or Kuntz and; the officers had a reasonable belief that Coreau or Kuntz resided at 502 North Congress and; the officers had a reasonable belief that either Coreau or Kuntz were present at 502 North Congress when they sought to enter the residence to serve the arrest warrant.

[¶ 14.] The trial court determined the State met its burden on the first ground. However, the State did not meet its burden in showing police had a reasonable belief either Kuntz or Coreau was at the home. The State did not provide any facts as to how old this information was or whether the informant was even reliable. Furthermore, the State did not provide any credible information that either Kuntz or Coreau resided at 502 North Congress. The trial court concluded the evidence was not sufficient to make an independent determination of whether the officers' beliefs were reasonable. The court concluded any evidence obtained from the officers' entry of the house and that subsequently was discovered with the search warrant violated Victoria's constitutional rights under the Fourth and Fifth Amendments of the United States Constitution and article VI, sections 2, 7, 9 and 11 of the South Dakota Constitution. It granted the motion to suppress all evidence and statements.

[¶ 15.] The State raises the following issue for our review:

> Whether the trial court erred in concluding that physical evidence seized from and statements made by Victoria should be suppressed.

### STANDARD OF REVIEW

[¶ 16.] Our standard of review is well settled.

> A trial court's findings of fact from a suppression hearing must be upheld unless

A: We go into the home to do a protective sweep.
Q: Protective, protecting yourselves?

A: Yes.
Q: Do you know who from?
A: No.

they are clearly erroneous.... This court's function under the clearly erroneous standard is to determine whether the decision of the lower court lacks the support of substantial evidence, evolves from an erroneous view of the applicable law or whether, considering the entire record, we are left with a definite and firm conviction that a mistake has been made. In making this determination, we review the evidence in a light most favorable to the trial court's decision.

*State v. Benallie,* 1997 SD 118, ¶ 10, 570 N.W.2d 236, 238 (citing *State v. Dreps,* 1996 SD 142, ¶ 8, 558 N.W.2d 339, 341 (citation omitted)).

## ANALYSIS AND DECISION

[¶ 17.] **Whether the trial court erred in concluding that physical evidence seized from and statements made by Victoria should be suppressed.**

■ [¶ 18.] The Fourth Amendment of the Constitution of the United States provides:

The right of the people to be secure in their person, houses, papers, and effects, against *unreasonable* searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

US Const amend IV (emphasis added). This Court has recognized the South Dakota Constitution provides individuals with similar protection from unreasonable searches. The State constitutional provision reads:

The right of the people to be secure in their persons, houses, papers and effects, against *unreasonable* searches and seizures shall not be violated, and no warrant shall issue but upon probable cause supported by affidavit, particularly describing the place to be searched and the person or thing to be seized.

SD Const art VI, § 11 (emphasis added). For the reasons set forth below we find the search of Victoria's home was in violation of the Fourth Amendment of the United States Constitution and art VI, § 11 of the South Dakota Constitution. Therefore, the trial court did not err in suppressing the evidence and statements obtained from this unreasonable search.

[¶ 19.] *A. Reasonable Search–Burden of Proof.*

■ [¶ 20.] "[P]hysical entry of the home is the chief evil against which the wording of the Fourth Amendment is directed." *Payton v. New York,* 445 U.S. 573, 585, 100 S.Ct. 1371, 1379–80, 63 L.Ed.2d 639, 650 (1980). Searches inside a home without a warrant have been classified under federal law as "presumptively unreasonable." *Id.* 445 U.S. at 586, 100 S.Ct. at 1380, 63 L.Ed.2d at 651.

Thus the most basic constitutional rule in this area is that searches conducted outside the judicial process, without prior approval by judge or magistrate, are *per se* unreasonable under the Fourth Amendment—subject only to a few specifically established and well-delineated exceptions. The exceptions are jealously and carefully drawn, and there must be a showing by those who seek exemption ... that the exigencies of the situation made that course imperative. The burden is on those seeking the exemption to show the need for it.

*Coolidge v. New Hampshire,* 403 U.S. 443, 454–55, 91 S.Ct. 2022, 2032, 29 L.Ed.2d 564, 576 (1971) (citations and internal quotations omitted—italics original). We have interpreted art VI, § 11 of the South Dakota Constitution in a similar vein: "Warrantless arrests and searches, therefore, are unconstitutional, unless there is a showing by those who seek exemption from the warrant requirement that their actions were reasonable, based on probable cause, and that the exigencies of the situation made the course imperative." *State v. Max,* 263 N.W.2d 685, 687 (S.D.1978) (citation omitted).

[¶ 21.] As the general rule is warrantless searches are unreasonable and therefore unconstitutional, we must determine if the State has met its burden of proof that the search falls into one of the limited exceptions. *State v. Heumiller,* 317 N.W.2d 126, 128 (S.D.1982) (citing *Max,* 263 N.W.2d at 687).

[¶ 22.] *1. Exceptions*

[¶ 23.] The first, and most well known exception to the warrant requirement is exigent circumstances. *Heumiller*, 317 N.W.2d at 129 (citing *Payton*, 445 U.S. at 590, 100 S.Ct. at 1382, 63 L.Ed.2d at 653). Exigent circumstances would justify a warrantless entry into a home for the purpose of either arrest or search. *Payton*, 445 U.S. at 590, 100 S.Ct. at 1382, 63 L.Ed.2d at 653. Exigent circumstances exist when there is an emergency, the situation demands immediate attention and there is no time to get a warrant. *Heumiller*, 317 N.W.2d at 129 (citations omitted). A common example is hot pursuit. *See Warden v. Hayden*, 387 U.S. 294, 87 S.Ct. 1642, 18 L.Ed.2d 782 (1967). The exigent circumstances doctrine "is to be applied to the facts as perceived by the police at the time of entry, not as subsequently uncovered." *Heumiller*, 317 N.W.2d at 129. We have established guidelines to assist in the determination of whether exigent circumstances exist.

> [To determine] when exigent circumstances exist . . . . [c]onsiderations that are particularly relevant are as follows:
>
> 1. That a grave offense is involved . . .;
> 2. that the suspect is reasonably believed to be armed;
> 3. that a clear showing of probable cause exists, including "reasonably trustworthy information," to believe that the suspect committed the crime involved;
> 4. that there is a strong reason to believe . . . the suspect is [on] the premises . . .;
> 5. that a likelihood exists that the suspect will escape . . .;
> 6. that the entry, though not consented to, is made peaceably; and
> 7. time of entry.

*Max*, 263 N.W.2d at 687 (citation omitted).

[¶ 24.] The second exception to the warrantless search is consent. *See Schneck-loth v. Bustamonte*, 412 U.S. 218, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973); *Benallie*, 1997 SD 118, 570 N.W.2d 236. An individual can waive the warrant requirement by consenting to a search by law enforcement officers. For a consensual search to be valid, it must be given by someone who has the authority to consent and it must be given voluntarily. *Benallie*, 1997 SD 118 at ¶ 11, 570 N.W.2d at 238. "Consent can be given by a third person who has common authority over or other sufficient relationship to the premises or effects sought to be inspected." *Id.* (citing *State v. Tapio*, 459 N.W.2d 406, 414 (S.D. 1990)).

[¶ 25.] The third exception to the rule forbidding warrantless searches is the search incident to an arrest. *See Chimel v. California*, 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969); *State v. Rice*, 327 N.W.2d 128 (1982). "A search incident to arrest permits a warrantless search of an individual and of the area within his immediate vicinity following his arrest, so long as the search is contemporaneous with the arrest and is confined to the immediate vicinity of the arrest." *Rice*, 327 N.W.2d at 130. A warrantless search in such a situation is justified to prevent the removal of weapons and the destruction or concealment of evidence. *Id.* (Citation omitted).

[¶ 26.] The final exception to the rule forbidding warrantless searches of the home is the protective sweep. *See Maryland v. Buie*, 494 U.S. 325, 110 S.Ct. 1093, 108 L.Ed.2d 276 (1990). In *Buie*, the Supreme Court found the Fourth Amendment permitted properly limited protective sweeps in connection with an in-home arrest when the officer possesses a reasonable belief based on specific and articulable facts the area to be searched harbors an individual posing a danger to the arresting officers. *Id.*[2] The officer may conduct the search until "[the suspect has been] found, however, [when] the search for him [is] over, . . . there [is] no longer [any] particular justification for entering any

---

**2.** *Buie* limits itself to the issue of whether law enforcement may make a protective sweep "while effecting the arrest of a suspect in his home pursuant to an arrest warrant. . . ." 494 U.S. at 327, 110 S.Ct. at 1094–95, 108 L.Ed.2d at 281–2. The case is silent as to the authority of law enforcement, if any, to conduct a protective sweep in other buildings such as the dwelling of a third party.

rooms that had not yet been searched." *Id.* 494 U.S. at 333, 110 S.Ct. at 1097, 108 L.Ed.2d at 285. We will consider the *Buie* protective sweep in more detail in the latter part of the opinion, as the State relies on the protective sweep exception to justify the officers' search.

[¶ 27.] *B. Search of the Home Pursuit to an Arrest Warrant for a Third Party.*

[¶ 28.] Whether a law enforcement officer could legally search for the subject of an arrest warrant in the home of a third party without first obtaining a search warrant and absent exigent circumstances or consent is an issue of first impression in South Dakota. The United States Supreme Court addressed this issue in *Steagald v. United States,* 451 U.S. 204, 101 S.Ct. 1642, 68 L.Ed.2d 38 (1981).[3]

[¶ 29.] In *Steagald,* Drug Enforcement Administration officials (DEA) obtained information that placed Ricky Lyons (Lyons), a federal fugitive, at a home in Atlanta, Georgia. *Id.* 451 U.S. at 206, 101 S.Ct. at 1644, 68 L.Ed.2d at 41–2. Days after receiving this information, DEA officers drove to the address and they observed two men, Gaultney and Steagald, standing outside the home. *Id.* Officers approached the men, frisked them, demanded identification and determined neither was Lyons. *Id.* With only the arrest warrant for Lyons as a justification for entry, they proceeded to enter the home. *Id.* 451 U.S. at 206, 101 S.Ct. at 1644–45, 68 L.Ed.2d at 42. Gaultney's wife was alone in the house. *Id.* 451 U.S. at 206, 101 S.Ct. at 1645, 68 L.Ed.2d at 42. She was forced to place her hands against the wall and guarded while agents looked for Lyons. *Id.* Officers did not find Lyons but they did uncover cocaine, thus prompting them to obtain a search warrant with which they uncovered a total of forty-three pounds of cocaine. *Id.* 451 U.S. at 206–7, 101 S.Ct. at 1645, 68 L.Ed.2d at 42. Steagald was arrested and faced federal drug charges. *Id.* 451 U.S. at 207, 101 S.Ct. at 1645, 68 L.Ed.2d at 42.

[¶ 30.] Steagald moved to suppress all the evidence uncovered during the search on the grounds it was illegally obtained because agents failed to secure a search warrant before entering the home. *Id.* The district court denied the motion and the Fifth Circuit Court of Appeals affirmed the lower court's decision. *Id.*

[¶ 31.] The Supreme Court looked at the history and purpose of both a search warrant and arrest warrant before addressing the merits of Steagald's claims. *Id.* 451 U.S. at 212, 101 S.Ct. at 1648, 68 L.Ed.2d at 46. The Court found the purpose of a warrant is to allow a neutral judicial officer to make a determination whether the police have probable cause to conduct a search or seizure. *Id.* The warrant process serves as a "checkpoint" between the Government and the individual, making sure citizens are protected from overzealous intrusions by the police. *Id.* "However, while an arrest warrant and a search warrant both serve to subject the probable-cause determination of the police to judicial review, the interests protected by the two warrants differ." *Id.* 451 U.S. at 212–13, 101 S.Ct. at 1648, 68 L.Ed.2d at 46.

> An *arrest warrant* is issued by a magistrate upon a showing that probable cause exists to believe that the subject of the warrant has committed an offense and thus the warrant primarily serves to protect an individual from an unreasonable seizure. A *search warrant,* in contrast is issued upon a showing of probable cause to believe that the legitimate object of a search is located in a particular place, and therefore safeguards an individual's interest in the privacy of his home and possessions against the unjustified intrusion of the police.

*Id.* 451 U.S. at 213, 101 S.Ct. at 1648, 68 L.Ed.2d at 46. (Emphasis added). Following this rationale, the Supreme Court considered if the arrest warrant for Lyons adequately safeguarded Steagald's Fourth Amendment interests. *Id.* The arrest warrant represents a judicial finding that Lyons had committed a felony and authorized the

---

**3.** *Steagald* was first cited by this Court in *Heumiller,* 317 N.W.2d at 128. However, it was cited for the general proposition that warrantless searches of the home are unreasonable under the Fourth Amendment.

agents to seize him. *Id.* This was the only act officers were authorized to do under the warrant. *Id.*

[¶ 32.] The Court found the DEA officers sought to do more with the warrant than arrest Lyons. *Id.* They used the arrest warrant as a justification to enter the home of a third person. *Id.* This approach defeated the definition of "reasonable" as devised by the Framers of the Fourth Amendment. *Id.* 451 U.S. at 220, 101 S.Ct. at 1651–52, 68 L.Ed.2d at 50–51. The Court noted that:

> while the warrant in this case may have protected Lyons from an unreasonable seizure, it did absolutely nothing to protect [Steagald's] privacy interest in being free from an unreasonable invasion and search of his home. Instead, [Steagald's] only protection from an illegal entry and search was the agent's personal determination of probable cause. In the absence of exigent circumstances, we have consistently held that such judicially untested determinations are not reliable enough to justify an entry into a person's home to arrest him without a warrant, or a search of a home for objects in the absence of a search warrant.

*Id.* 451 U.S. at 213–14, 101 S.Ct. at 1648, 68 L.Ed.2d at 46 (citing *Payton; Johnson v. United States,* 333 U.S. 10, 68 S.Ct. 367, 92 L.Ed. 436 (1948)).

[¶ 33.] The Court noted in this scenario, to hold otherwise would create potential for abuse. *Steagald,* 451 U.S. at 215, 101 S.Ct. at 1649, 68 L.Ed.2d at 47. If officers were given this range to search, they could search the homes of friends, family and acquaintances of any person named on an arrest warrant. *Id.*[4] Furthermore, an arrest warrant could serve as a justification for entering a home where police have suspicion of any illegal activity. *Id.*

[¶ 34.] The only means by which the search of Steagald's home could have been reasonable under the Fourth Amendment was for officers to obtain a search warrant in advance. *Id.* 451 U.S. at 222, 101 S.Ct. at 1653, 68 L.Ed.2d at 52. By obtaining a search warrant for the home, the individual's inter-

est in his home would be protected by an independent judicial determination. *Id.* Also this requirement "[would] not significantly impede effective law enforcement efforts." *Id.* 451 U.S. at 221, 101 S.Ct. at 1652, 68 L.Ed.2d at 51.

[¶ 35.] Other states have considered the question of a warrantless entry into the home of a third party based on an arrest warrant. *See State v. Luloff,* 325 N.W.2d 103 (Iowa 1982); *State v. Kao,* 215 Mont. 277, 697 P.2d 903 (Mont 1985); *State v. Johnson,* 64 N.C.App. 256, 307 S.E.2d 188 (N.C.App. 1983); *State v. Kiper,* 193 Wis.2d 69, 532 N.W.2d 698 (Wis 1995). These states, following *Steagald,* have held that search of a home pursuit to an arrest warrant for a third party is unreasonable and therefore unconstitutional.

[¶ 36.] Based upon the reasoning in *Steagald,* we conclude that absent the limited exceptions, a law enforcement officer must obtain a search warrant before he or she may legally search for the subject of an arrest warrant in the home of a third party.

[¶ 37.] An application of this holding to the case at issue leads us to the conclusion that the trial court did not err in granting the motion to suppress the evidence. The rationale we have adopted from *Steagald* creates a distinction between the interests protected by an arrest warrant and a search warrant. Coreau and Kuntz had warrants for their arrest. Both had been allowed the protection of a neutral judicial officer or grand jury who had made the decision that the police had probable cause to seize them. Victoria had no such protection.

[¶ 38.] The State offers a number of grounds to justify the entry and warrantless search of Victoria's home. It does not, however, rely on the exceptions of consent, exigent circumstances or search pursuant to an arrest. We will address each relevant argument.

[¶ 39.] First, the State argues under *Payton,* an arrest warrant founded on probable cause implicitly carries with it the limited

---

4. *See Lankford v. Gelston,* 364 F.2d 197 (4th Cir.1966), where police, armed only with arrest

warrants, conducted warrantless searches of 300 homes for two fugitives.

authority to enter a dwelling in *which the suspect lives* when there is *reason* to believe the suspect is within. As to Kuntz, the State claims that since the officers were serving an arrest warrant on Kuntz and there was indication that he might be there, the officers were justified in entering the home under *Payton*. This argument fails for two reasons, one factual and the other legal. First, the trial court heard all the testimony and concluded that the officers possessed no reliable information as to whether Kuntz lived at this address.[5] More telling, the trial court found, "[t]he application for the search warrant of the Defendant's home in this case is based upon totally false information and said information had no relationship to the residence owned by Victoria Meyer at 502 North Congress." [6] Second, the State's argument is legally deficient as this approach does not provide adequate protection for Victoria.

[¶ 40.] The State attempts the same rationale as to Coreau, alleging that under *Payton* the officers were authorized by the arrest warrant to enter the home because Coreau was living there. Factually, the trial court treated this evidentiary question the same as with Kuntz and found there was no truthful evidence presented which would substantiate Coreau was living at 502 North Congress. In fact, when defense counsel questioned one of the officers about whether Coreau lived in the home, the State objected on the basis of relevance. The objection was sustained by the court and no evidence or testimony was received to indicate Coreau was a resident of the home. Lack of evidence regarding Coreau's living arrangements was a factor that prompted the trial court's ruling.[7] The trial court found Coreau did not live at 502 North Congress and under *Steagald,* his arrest warrant did not justify entry into Victoria's home.[8] Moreover, as we stated in our analysis above concerning Kuntz, the warrant for Coreau did not adequately protect Victoria's interests.

[¶ 41.] In hindsight, the officers who intended to execute the arrest warrant on Kuntz or Coreau at 502 North Congress, would have been prudent to obtain a search warrant for the home in advance, if they had information to create a basis for a search warrant.[9] This is particularly true since they knew the home belonged to Victoria and the residency status of the person they sought to arrest was, at best, questionable. Also, if their information that Kuntz was staying there was reasonable and reliable, they could

---

**5.** Officer Bryan Locke gave testimony that Victoria Meyer lived at 502 North Congress:

> Q: Okay. Did you know of anybody else who would possibly be at the 502 North Congress?
> A: The indictment indicated that the address was one of Vicky Meyer's, Victoria Meyer's.

**6.** Even assuming, arguendo, the trial court accepted in toto the testimony offered by the State it established only the following about Kuntz:
> 1. The indictment contained a note that Kuntz may "possibly" live at 502 North Congress.
> 2. Victoria was the ex-girlfriend of Kuntz, not his current girlfriend.
> 3. He was never found at the house and there were no signs that he had been there.

**7.** In the memorandum decision the trial court pointed out the State's mistake in objecting to this information at the suppression hearing:
> STATE: Your Honor, I guess I'm going to object. I don't know what the relevance is in this proceeding to whether or not Chad Coreau was living there.
Memorandum decision, page 5, fn 5. Upon discovering its evidentiary error, the State sought to re-open the case to place this crucial evidence into the record. The trial court denied the request to reopen and the State has not appealed this denial. Thus, the State is bound by an empty record it intentionally created.

**8.** Again, assuming arguendo, the trial court accepted the testimony offered by the State concerning Coreau, it established only the following:
> 1. An ex-girlfriend of Coreau's informed law enforcement Coreau could be found at the house. There was no testimony by the ex-girlfriend or about the ex-girlfriend's veracity nor her motive for making such a statement.
> 2. Coreau sleepily answered the door when the law enforcement officers knocked. The fact that he answered the door may be explained by the fact the owner and only other person in the house was in a bed without clothes.
> 3. Coreau would later claim co-ownership of two marijuana pipes. Other than this there is no testimony of his property being located on the premises that would indicate he lived there.

**9.** Given the scant nature of the record before us, it cannot be ascertained if law enforcement possessed enough facts to justify the issuance of a search warrant.

have easily obtained a warrant, considering Kuntz' reputation for fleeing from law enforcement officials and resisting arrest.[10] Given Kuntz' reputation and the fact officers knew it was Victoria's home, the only means of conducting a legal, reasonable search under these facts was by providing Victoria the protection of a search warrant.[11]

[¶ 42.] Finally, the State contends that the officers had legal authority to re-enter Victoria's home after Coreau's arrest for the purpose of performing a *protective sweep* of the home. See *Buie,* 494 U.S. 325, 110 S.Ct. 1093, 108 L.Ed.2d 276. The State claims the Fourth Amendment permits a protective sweep if the searching officer possessed a reasonable belief based on specific and articulable facts which, taken together with the rational inferences from those facts, reasonably warranted the officer in believing that the area to be swept harbored an individual posing a danger to the officers. This is a correct statement of the doctrine but is not factually applicable here. The State now claims the individual who posed a threat to the officers was Kuntz. It is noteworthy that Locke indicated that at the time of the sweep, he did not know from whom they were protecting themselves.[12] As we have stated before, it was not reasonable for the officers to believe Kuntz was present at 502 North Congress. Moreover, the State cannot justify the protective sweep with Coreau's arrest. Coreau clearly was no threat as he had been removed from the house and was handcuffed on the front porch. Furthermore, *Buie* can be distinguished from this case. The protective sweep in *Buie* was conducted in Buie's own home after police had obtained an arrest warrant for him and after they had called his house to verify that he was home. *Id.* 494 U.S. at 328, 110 S.Ct. at 1095, 108 L.Ed.2d at 282. The *Buie* protective sweep did not involve a search of a third party's home and is inapplicable in this case.

## CONCLUSION

[¶ 43.] An arrest warrant and a search warrant are safeguards of individual rights. These processes serve a gate keeping purpose. They protect individuals from unnecessary intrusions by the government. In this case the purpose of the arrest warrant for Kuntz was to protect him from unlawful seizure. The arrest warrant for Kuntz did not serve to protect Victoria from the unreasonable search of her home. From that rationale, the arrest warrant for Coreau did not serve to protect Victoria, either. Because Kuntz' and Coreau's arrest warrants only addressed their individual interests, the search of Victoria's home was not reasonable.

---

10. Officer Bryan Locke gave testimony as to his personal knowledge of Kuntz' tendency to flee police.
   Q: Have you had dealings with Robert Kuntz before?
   A: Yes.
   Q: Have you had problems with Mr. Kuntz on prior occasions?
   A: Usually when I deal with him, yeah, they're problems.
   Q: Okay. What types of problems?
   A: Either through arrest warrants or civil papers, traffic violations.
   Q: Okay. Has he ever avoided receiving those things?
   A: I guess I don't understand the question.
   Q: Okay. I'll rephrase it. Has he ever attempted to escape from law enforcement or attempted to escape detection from law enforcement in your dealings with him?
   A: I believe his history would indicate that he has fled and resisted before.
   Q: Okay. This is not your personal knowledge, but what other officers have experienced?
   A: It would be my personal knowledge.

11. The State also argues the search was valid pursuant to *United States v. Risse,* 83 F.3d 212 (8th Cir.1996). There the district court found that based upon the facts, law enforcement possessed a valid "reasonable belief" Rhodes was living with Risse and thus the arrest warrant for Rhodes under *Payton* served as a valid basis to enter the Risse/Rhodes home where drugs and contraband were discovered. The Eighth Circuit held the district court's findings of fact were not clearly erroneous. As in the case now before us, the circuit court concluded to the contrary, that there was no "reasonable basis" to find Kuntz or Coreau lived with Meyer, the facts are not clearly erroneous and support the circuit court's conclusion. As the facts in *Risse* are clearly distinguishable and the law examined deals with the rationale found in *Steagald* and *Payton,* which we discussed above, we find no reason to further address this argument.

12. *Supra,* note 1.

Because an arrest warrant authorizes the police to deprive a person of his liberty, it necessarily also authorizes a limited invasion of that person's privacy interest when it is necessary to arrest him in his home. This analysis, however, is plainly inapplicable when the police seek to use an arrest warrant as legal authority to enter the home of a third party to conduct a search. Such a warrant embodies no judicial determination whatsoever regarding the person whose home is to be searched. Because it does not authorize the police to deprive the third person of his liberty, it cannot embody any derivative authority to deprive this person of his interest in the privacy of his home. Such a deprivation must instead be based on an independent showing that a legitimate object of a search is located in the third party's home. We have consistently held, however, that such a determination is the province of the magistrate, and not that of the police officer.

*Steagald*, 451 U.S. at 214–15, n. 7, 101 S.Ct. at 1648–49, n. 7, 68 L.Ed.2d at 46–7, n. 7.

[¶ 44.] In sum, we hold that absent an exception to the rule, a law enforcement officer may not legally search for the subject of an arrest warrant in the home of a third party without first obtaining a search warrant. Viewing the evidence in a light most favorable to the trial court we find the court did not err in granting Victoria's motion to suppress the evidence.

[¶ 45.] We affirm.

[¶ 46.] MILLER, Chief Justice, and SABERS, AMUNDSON and KONENKAMP, Justices, concur.

