2000 SD 133

**STATE of South Dakota, Plaintiff and Appellant,**

v.

**Robert Owen WILSON, Defendant and Appellee.**

**State of South Dakota, Plaintiff and Appellant,**

v.

**Nicholas Palmer Blommer, Defendant and Appellee.**

Nos. 21304, 21305.

Supreme Court of South Dakota.

Argued Sept. 21, 2000.

Decided Oct. 18, 2000.

Mark Barnett, Attorney General, Ann D. Meyer, Assistant Attorney General, Pierre, for plaintiff and appellant.

James R. Haar, Tripp, for defendant and appellee Wilson.

William J. Klimisch of Goetz and Klimisch, Yankton, for defendant and appellee Blommer.

GILBERTSON, Justice.

[¶ 1.] The defendants were arrested in a motel room, which was searched pursuant to a search warrant. The trial court suppressed the evidence seized as to both defendants because the judge who issued this warrant acted outside the circuit to which he had been elected. The State appeals the orders suppressing the evidence seized pursuant to an intermediate appeal granted by this Court. We affirm.

## FACTS AND PROCEDURE

[¶ 2.] In the early hours of October 9, 1999, Officer Wentzel of Parkston, South Dakota, was approached by a confidential informant. The informant told Wentzel that defendant Wilson had shown her a green leafy substance, in a drawer in room 22 of the Rainbow Motel located in Parkston, South Dakota. In addition, the informant notified Wentzel that Wilson had identified the substance as marijuana. When asked by Wilson if she knew anyone in Parkston that dealt in drugs, she replied that her cousin had in the past. Wilson then informed her that he could supply marijuana cheaper to her cousin than what her cousin was currently paying. Finally, the informant also told Wentzel that Wilson was driving a large maroon vehicle with Minnesota license plates, which was parked in front of Wilson's motel room.

[¶ 3.] Accompanied by Police Chief Weekly, Wentzel verified that there was a vehicle matching the informant's description parked by the motel. Wentzel contacted the management of the motel and confirmed that Wilson was the driver of the car and that he was registered in room 22. The manager informed Wentzel that she had discovered a green leafy substance while cleaning, but had thrown it in the trash. The trash bag was retrieved by the manager and the green leafy substance inside was removed. After performing field tests on the substance, Wentzel verified that the substance was in fact marijuana.

[¶ 4.] Wentzel then attempted to locate a judge to secure a warrant to search room 22 of the Rainbow Motel. Parkston is situated in Hutchinson County which is located in the First Judicial Circuit, but

Wentzel's attempts to reach a judge of that circuit were unsuccessful. Wentzel then telephoned Judge Lee D. Anderson of the Fourth Judicial Circuit,[1] in Mitchell, South Dakota, because Wentzel believed that Judge Anderson was authorized to issue the warrant. Judge Anderson also believed that he was authorized to issue the warrant pursuant to an order, issued on March 3, 1993, by the Chief Justice of the Supreme Court, assigning him to assist the First Judicial Circuit. However, the March 3, 1993 order had been rescinded by the Chief Justice on September 29, 1998 and copies thereof were distributed to Judge Anderson and other affected officials.

[¶ 5.] After Judge Anderson signed the warrant, Wilson's room at the Rainbow motel was searched by Wentzel. Wentzel discovered two bags of green leafy substance and related drug paraphernalia. Blommer[2] and Wilson were arrested and subsequently indicted in the First Judicial Circuit for possession of more than one-half pound but less than one pound of marijuana, a Class 5 felony.

[¶ 6.] Each defendant filed a motion to suppress all the evidence seized from the motel room and all statements made to law enforcement pursuant to the search. The trial court granted the defendants' motions pursuant to article V, section 11 of the South Dakota Constitution on the grounds that Judge Anderson, as a Fourth Circuit Judge, was not authorized to judicially act in the First Circuit. The trial court found that because the Chief Justice had revoked his earlier order, Judge Anderson was no longer assigned to the First Circuit, therefore, he had no authority to issue the search warrant. As a result, the trial court determined the search was illegal and all fruits thereof were improperly seized.

## STANDARD OF REVIEW

[¶ 7.] A trial court's decision to suppress evidence has traditionally been reviewed under an abuse of discretion standard. *State v. Durke*, 1999 SD 39, ¶ 11, 593 N.W.2d 407, 409. However, no discretion would exist here as the interpretation of Constitutional provisions is a matter of law reviewed under the *de novo* standard. *Steinkruger v. Miller*, 2000 SD 83, ¶ 8, 612 N.W.2d 591, 595. The interpretation of statutes is also reviewed under the *de novo* standard as a matter of law. *Welsh v. Centerville Township*, 1999 SD 73, ¶ 7, 595 N.W.2d 622, 624.

## ANALYSIS AND DECISION

[¶ 8.] South Dakota's original constitution was adopted on October 1, 1889. From 1889 to 1970, it was amended 79 times, each time adding more complexity to the document. Inconsistencies began to appear, and in general, any amendments dealt only with minor problems, leaving "the larger deficiencies untouched." South Dakota Constitutional Revision Commission, Third Annual Report 1 (1972). In 1969, the legislature created the Constitutional Revision Commission "to enter into a comprehensive study of the constitution of the State of South Dakota to determine ways and means to improve and simplify the constitution." *Id.* As part of the revision process, the commission recommended that the various state and local court systems be consolidated into a unified judicial system. This new structure was recommended to streamline the court system by "eliminating overlapping jurisdiction between courts." 1 Recommendations of the Constitutional Revision Com-

---

1. Effective July 1, 2000 per SDCL 16–5–1.2 the former Fourth Judicial Circuit was abolished and its counties divided into the First and Third Judicial Circuits. Davison County and Judge Anderson's office were assigned to the First Judicial Circuit. Hereafter all references to circuits are as they existed as of the date of the issuance of the search warrant, that being October 9, 1999.

2. Blommer was sharing the room with Wilson while they worked on a local construction project.

mission (Recommendations) 34 (1971). With an eye towards the most efficient allocation of resources, the commission recommended establishing the office of Chief Justice as administrative head of this unified court system. *Id.* These recommendations were adopted by the voters of South Dakota in 1972, and the current Unified Judicial System was thereby established.

[¶ 9.] The foundation of today's decision was recognized in our holding in *State v. Horst*, 504 N.W.2d 862 (S.D.1993).

> Except as is permitted by constitutional or statutory provision, a judge cannot act for a court other than the one for which he was selected. The jurisdiction of a judge being incident to, and growing out of, the jurisdiction of the court of which he is a member, a judge cannot, in the absence of authority of law, exercise the judicial functions of a court for which he has not been selected.

*Id.* at 863–64 (quoting 48A CJS, *Judges* § 69 (1981). *See also State v. Springer–Ertl*, 1997 SD 128, 570 N.W.2d 39. Judge Anderson was selected by the voters to be on the Fourth Judicial Circuit Court. South Dakota Legislative Manual 493 (1999–2000 ed.). It was from there that he was subsequently re-elected in 1998. *Id.* Therefore, his authority to act in the First Circuit, if any, must arise from a constitutional or statutory provision not inconsistent therewith.

[¶ 10.] We first examine relevant constitutional provisions in an attempt to discern authority for Judge Anderson's actions. In South Dakota, there are three constitutional methods by which a circuit judge is authorized to act. First, a judge may be elected by the voters of the represented circuit. S.D.Const. art. V, § 7. Second, a judge may be appointed by the Governor in the case of a vacancy in the circuit. *Id.* Finally, a judge may be assigned to another circuit by the Chief Justice of the Supreme Court. *Id.* § 11.[3]

[¶ 11.] As Judge Anderson was neither elected to, nor appointed to the First Circuit, we shall begin our constitutional analysis with article V, section 11. That section provides, in relevant portion that:

> The chief justice shall have power to assign any circuit judge to sit on another circuit court, or on the Supreme Court in case of a vacancy or in place of a justice who is disqualified or unable to act. The chief justice may authorize a justice to sit as a judge in any circuit court.

*Id.* The previous applicable constitutional provision stated that "[t]he judges of the circuit courts may hold courts in other circuits than their own, under such regulations as may be prescribed by law." S.D.Const. of 1899, art. V, § 29. Under the former section 29, a circuit court judge was allowed to orally request that a judge

3. As previously noted, the 1972 constitutional revisions also established the newly created office of Chief Justice of the South Dakota Supreme Court.

> The Chief Justice concept is established with a chain of command down to the lowest court. This allows the Chief Justice, as administrator of the court system, to assign judicial personnel to areas of increased litigation, thus providing better service without increased costs .... The Chief Justice is the administrative head, not only of the Supreme Court, but also the entire integrated court system of the State.

*Recommendations* 34, 49. Clearly Circuit Judges such as Judge Anderson possess, by virtue of the Constitution and statutes, independent judicial powers to act within their judicial circuits. Had he issued the warrant for service within his judicial circuit, it would have been a valid act legally sufficient for execution. He possesses these independent powers unlike other Unified Judicial System employees who are under the control of an administrative chain of command that is ultimately supervised by, and accountable to the Chief Justice. However, as will be established, when a circuit judge attempts to act outside his judicial circuit, this independent judicial power does not exist, and pursuant to the constitutional mandate of article V, § 11, any authority to act is dependent upon an order by the Chief Justice setting forth the extent and limits of this out-of-circuit authority.

from another circuit preside over an action in the former circuit. *State v. Montgomery,* 26 S.D. 539, 541, 128 N.W. 718, 719 (1910). It was also legally allowable for a judge of one circuit to issue a writ of mandamus as to a proceeding in another circuit. *Holden v. Haserodt,* 3 S.D. 4, 5–6, 51 N.W. 340, 340–41 (1892). The Constitutional Revision Commission found that this process, whereby judges could transact business in another circuit at the request of that circuit, contributed to the overall inefficiency of the judicial system. Therefore, in 1972, this system was repealed and replaced with the provisions of article V, section 11. In the words of the Commission, allowing the Chief Justice to assign circuit judges to another circuit "provides for the best possible utilization of judicial personnel." *Recommendations* 55.

[¶ 12.] The State asserts that article V, section 11 is not the exclusive method by which circuit judges may be appointed to another circuit. To support this argument, the State claims that, while section 11 may apply to "everyday situations," it does not apply in times of emergency, "like the urgent need for the execution of a search warrant." The State has not alerted us to any substantive authority for this proposition, nor have we discovered any such authority. When an ambiguity exists in constitutional language, we look to "the legislative history and historical background" for guidance. *Cummings v. Mickelson,* 495 N.W.2d 493, 498–99 (S.D.1993). It appears to us that Judge Anderson's actions are included in what the framers of the current constitutional provision intended to prohibit. Under the 1889 Constitution, judges were allowed much more flexibility when crossing circuit boundaries. The framers of the 1972 amendments instead provided for a more efficient model when they drafted a provision which granted the power to assign judicial personnel to the Chief Justice. *Recommendations* 34. By repealing the former section 29, the people of South Dakota expressly forbid circuit judges from acting outside their boundaries without an assignment from the Chief Justice.

[¶ 13.] When interpreting statutory provisions "[w]e presume the Legislature does not insert surplusage into its enactments." Mid–Century Ins. Co. v. Lyon, 1997 SD 50, ¶ 9, 562 N.W.2d 888, 892. The same rationale applies to constitutional provisions. If, as the State claims, there is some other method by which Judge Anderson could have acted within the First Circuit, there would be no need to give the Chief Justice this assignment power. In addition, there would have been no need for the Chief Justice to previously authorize Judge Anderson to assist with the business of the First Circuit. Nor would it have been necessary to subsequently revoke that authorization. The State's argument ignores the wording of section 11, as well as the framer's intent, and hence must fail.[4]

[¶ 14.] The State also argues that article V, section 5 of the South Dakota Constitution would allow Judge Anderson to act across circuit boundaries. That provision states that "[t]he circuit courts have original jurisdiction in all cases except as to any limited original jurisdiction granted to other courts by the Legislature. The circuit courts and judges thereof have the power to issue, hear and determine all original and remedial writs." S.D.Const. art. V, § 5. The State argues that this provision somehow supercedes all circuit boundaries, granting statewide jurisdiction. We do not agree. Whenever possible, this Court will "construe terms in a constitutional provision in pari materia."

---

**4.** The State also argues that use of the term "may" in article V, section 11 implies that the Chief Justice's power is discretionary and therefore, not the exclusive method of transferring authority across circuit boundaries. This argument ignores the obvious fact that "may" modifies the Chief Justice's power to appoint a *justice* to act as a judge in a circuit court. It clearly does not apply to the Chief Justice's power to appoint circuit court *judges* to another circuit court.

*Poppen v. Walker,* 520 N.W.2d 238, 247 (S.D.1994). In addition, we will not construe a constitutional provision to arrive at a strained, unpractical, or absurd result. *Nelson v. State Bd. of Dentistry,* 464 N.W.2d 621, 624 (S.D.1991). The State's reliance on the phrase "all cases" to mean "all cases in any circuit" is unfounded. To reach such a conclusion we would have to ignore the entire structure of the Unified Judicial System, as well as its constitutional foundation. The State's interpretation would indeed be "strained, unpractical, [and] absurd." *Id.* If judges are able to hear any and all cases brought in the State of South Dakota, there would be no need to establish circuit boundaries. In addition, the provision states that the power to issue, hear, and determine all writs is granted to the "circuit courts *and judges thereof.*" S.D.Const. art. V, § 5 (emphasis added). Use of the word "thereof" implies that the power attaches to judges *of that particular circuit. See* Black's Law Dictionary 1488 (7th ed.1999). When viewed in conjunction with article V, section 11, section 5 is construed to mean that a judge properly elected, appointed or assigned to a circuit has the power to transact business *only within that circuit.*

[¶ 15.] As no constitutional mandate exists to support Judge Anderson's actions, we now address the State's claim of separate statutory authority. The State argues that SDCL 16–6–29 gives a circuit judge the jurisdiction to hear matters throughout the state, even without appointment by the Chief Justice. That statute, in relevant part, provides as follows:

> A judge of the circuit court is a judge of the circuit court in the State of South Dakota and in any circuit in which he acts as a judge. The orders, judgments, and decrees of a circuit judge acting in a county other than one in his own circuit shall be as effectual for all purposes as though made by a judge regularly elected and qualified therein . . . .

SDCL 16–6–29. According to the State, "clearly, no jurisdictional limitation on a circuit court judge's authority to execute search warrants is contemplated by this statute." We do not agree. When examining statutes in the context of constitutional provisions, it bears repeating that "[s]tatutes must conform to the Constitution, not vice versa." *Poppen,* 520 N.W.2d at 242 (citations omitted). As we have determined that article V, section 11 gives the Chief Justice the exclusive authority to assign judges to another circuit, this statute must conform to the Constitution, "not vice versa." To reconcile these two provisions, we need only interpret the terms "acts" and "acting" to mean "acts or acting in a manner authorized by the Constitution." When a circuit judge acts in another circuit pursuant to assignment by the Chief Justice, then and only then, will its "orders, judgments, and decrees . . . be as effectual . . . as though made by a judge regularly elected and qualified therein . . . ." SDCL 16–6–29.

[¶ 16.] The State also finds support for Judge Anderson's actions in SDCL 23A–35–2. That statute provides that "[a] search warrant authorized by this chapter may be issued by a committing magistrate in the county where the property sought is located, on the request of a law enforcement officer or prosecuting attorney." *Id.* The definition of a "committing magistrate" includes "a judge *of the circuit court.*" SDCL 23A–45–9(3)(b) (emphasis added). Therefore, the statute requires that when a circuit judge acts as a committing magistrate, it must be a circuit judge authorized to act in the circuit that encompasses the county wherein the property sought is located. Here, the evidence was seized from a motel room located in Hutchinson County, which is part of the First Circuit. Because Judge Anderson was not a circuit judge authorized to act in the First Circuit, the State's argument fails.

[¶ 17.] There being no constitutional or statutory authority permitting

Judge Anderson to sign a search warrant to be executed in Hutchinson county, the warrant was invalid.

[¶ 18.] The State asserts that if we find Judge Anderson's execution of the search warrant to be improper, we should apply the common law *defacto officer* doctrine to justify his actions. The common-law is in force in South Dakota, except where it conflicts with the Constitution or statutes of this state. SDCL 1–1–23, –24. As any application of this doctrine would conflict with the Constitution and statutes of this state as we have previously discussed, the doctrine is inapplicable.

[¶ 19.] In addition, the State argues that exigent circumstances excused the actions of Judge Anderson. "Exigent circumstances exist when there is a situation that demands immediate attention *and there is no time to get a warrant*." *State v. Buchholz*, 1999 SD 110, ¶ 18, 598 N.W.2d 899, 903 (emphasis added) (citing *State v. Hanson*, 1999 SD 9, ¶ 35, 588 N.W.2d 885, 892). In this case, a warrant was secured and therefore, the doctrine does not apply.

[¶ 20.] The State's final argument rests upon an application of the good faith doctrine to the facts of this case. *See United States v. Leon*, 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984). The State argues that it should have been entitled to present evidence to establish the good faith attempts made by the police officer to locate a judicial officer empowered to act in the First Judicial Circuit.

However, the case authority brought forth by the State is inapplicable to the facts now before us. The cases cited by the State deal with technical violations of statutes or procedural rules, not actions prohibited by the jurisdiction's constitution. One case cited by the State explicitly recognizes the difference:

> [v]iolations of the rule *which do not amount to constitutional error* are considered 'nonfundamental,' and nonfundamental violations require suppression only where there is prejudice in the sense that the search would not have occurred or would not have been so abrasive had the rule been followed, or where there is evidence of intentional and deliberate disregard of the rule.

*People v. Ruiz*, 217 Cal.App.3d 574, 265 Cal.Rptr. 886, 892 (3 Dist.1990) (emphasis added). Actions by a police officer cannot be used to create jurisdiction, even when done in good faith.

[¶ 21.] The trial court's suppression of the evidence seized pursuant to a search warrant issued by Judge Anderson was not an abuse of discretion and is affirmed.

[¶ 22.] MILLER, Chief Justice, and SABERS, AMUNDSON and, KONENKAMP, Justices, concur.