2002 SD 162

**Dawn NOVAK and Donald Novak,
Plaintiffs and Appellants,**

v.

**Dennis McELDOWNEY, Defendant
and Appellee.**

No. 22179.

Supreme Court of South Dakota.

Argued Oct. 7, 2002.

Decided Dec. 23, 2002.

Casey N. Bridgman, Jeff Adel, of Bridgman and Adel, Wessington Springs, South Dakota, Attorneys for plaintiffs and appellants.

Jon C. Sogn, Heath R. Oberloh, of Lynn, Jackson, Shultz and Lebrun, Sioux Falls, South Dakota, Attorneys for defendant and appellee.

GILBERTSON, Chief Justice.

[¶ 1.] Dawn and Donald Novak brought several claims against Dennis McEldowney (McEldowney), which stemmed from Dawn's employment on McEldowney's farm. Dawn alleged breach of contract, intentional infliction of emotional distress, battery, sexual harassment, and punitive damages. Donald sought damages for loss of consortium. After a jury trial, Dawn was awarded $5,000 for her breach of contract claim; however, judgment was entered in McEldowney's favor on the other claims. The Novaks appeal the jury's verdict. We reverse and remand in part and affirm in part.

## FACTS AND PROCEDURE

[¶ 2.] McEldowney owns a farm near Wessington Springs, South Dakota and employs several people as farm workers. One of his employees, Donald Novak, began working for McEldowney in March of 1989 and continued working for him for the next ten years. After Donald sustained an injury to his hand in approximately 1995, his wife, Dawn, helped Donald perform his work around the farm. Before long, Dawn was working full-time and McEldowney began to pay her initially at an hourly wage, and later at a set salary beginning in November of 1997. The predominant part of Dawn's employment was managing the newly built hog confinement unit.

[¶ 3.] Throughout Dawn's employment, she alleged that there were numerous incidences of sexual harassment.[1] For example, she claimed McEldowney asked her how she became "horny," how she "got off," and how she became sexually aroused. Dawn further testified, and McEldowney admitted to at trial, that in August of 1997, while shingling a roof, McEldowney looked down the front of Dawn's shirt as she was climbing down a ladder, and commented to her that he had a nice view. He told her if she took off her shirt, then he would remove his shirt. At several other times, McEldowney smelled Dawn's hair and arms after she took a shower. Dawn also accused McEldowney of telling dirty jokes, talking in detail about the sexual exploits between President Bill Clinton and Monica Lewinsky, and urinating in front of her. Another major complaint by Dawn was that the entry to the bathroom, which the farm workers were required to use, did not have a door and whenever she showered, the shower curtain would blow open. She further alleged that on one occasion, she saw McEldowney nude in the bathroom and he laughed, telling her she had just received a "big treat that morning."

[¶ 4.] In addition to these incidences, Dawn claimed that in the Spring of 1998, after Dawn had showered and dressed and was working at a sink, McEldowney came in and put his hand on Dawn's breast and asked Dawn how that felt. She further alleges that on Halloween night of 1998, while they were discussing work at McEldowney's house, he grabbed her breasts

---

1. Dawn claims that back in 1995, before she was receiving compensation for her work, McEldowney ran his hand over her crotch when she was crawling into a crate to pull out some pigs. The trial court ruled that Dawn could not testify to this incident on the basis of the statute of limitations.

from behind and asked her how she liked that. The third incident of alleged actual contact purportedly occurred in the Spring of 1999. McEldowney came into town to look at remodeling that Dawn had done in the upstairs bathroom in the Novak's house.[2] While in the bathroom, McEldowney allegedly shut the door, put both arms around her, pushed her up against the sink and told her that he would show her some real loving. The Novaks quit working for McEldowney on June 1, 1999, two weeks after this alleged incident.

[¶ 5.] Just eleven days later, McEldowney hired Wes Byrd to work on his farm. The wife of Wes, Heather Byrd, began helping out on the farm by cooking and cleaning at the McEldowney house. Heather claimed that she, too, was sexually harassed by McEldowney. Some of the alleged conduct was that McEldowney smelled Heather's hair and arms and leaned up close to her. Heather also claimed that McEldowney left the door to the shower open so that Heather could see him while he showered. Heather further states that he allegedly lounged around the house in his underwear while Heather was present. On another occasion when McEldowney was in the house in town, Heather claims he came into the bathroom while she was cleaning it, shut the door, and would not let her out until her husband came home. She alleges that because she did not sleep with McEldowney, her husband was fired on July 9, 1999.

[¶ 6.] Prior to trial, the trial court granted McEldowney's motions in limine which excluded Heather's testimony and any other evidence regarding her claims, and any testimony concerning incidences that occurred in 1995 because it was be-

yond the statute of limitations. The Novaks appeal and raise the following issues:

1. Whether the trial court abused its discretion when it excluded the other bad acts evidence.

2. Whether the trial court abused its discretion when it excluded testimony regarding an alleged incident that occurred in 1995.

## STANDARD OF REVIEW

[¶ 7.] A court's evidentiary rulings are reviewed under the abuse of discretion standard. *State v. Smith*, 1999 SD 83, ¶ 39, 599 N.W.2d 344, 353 (citing *State v. Spiry*, 1996 SD 14, ¶ 11, 543 N.W.2d 260, 263) (citations omitted). An evidentiary ruling will not be overturned unless error is "demonstrated ... [and] shown to be prejudicial error." *Id.* (quoting *Shaffer v. Honeywell, Inc.*, 249 N.W.2d 251, 258 (S.D. 1976)). Error is prejudicial when, "in all probability ... [it] produced some effect upon the final result and affected rights of the party assigning it." *Id.* (quoting *K & E Land and Cattle, Inc. v. Mayer*, 330 N.W.2d 529, 533 (S.D.1983)).

## ANALYSIS AND DECISION

[¶ 8.] **1. Whether the trial court abused its discretion when it excluded the other bad acts evidence.**

[¶ 9.] Although the trial court found Heather's testimony to be relevant, it found that it was unduly prejudicial. McEldowney did not file a cross-appeal on the relevancy issue and only argues that it was prejudicial. For purposes of this appeal, we will mainly focus on this argument. However, we will briefly address the relevancy issue in our analysis.

---

**2.** The house actually belonged to McEldowney. As part of the Novak's compensation, they were allowed to live in this house.

[¶ 10.] For evidence to be admitted during trial, it first must be found to be relevant.[3] Once the evidence is found to be relevant, it is admissible unless it is specifically excluded. The applicable statute involved in the instant case is SDCL 19–12–5 (FRE 404(b)), which provides:

> Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

[¶ 11.] Furthermore, this statute is a rule of inclusion. *State v. Wright,* 1999 SD 50, ¶ 13, 593 N.W.2d 792, 798. Therefore, if evidence of other acts is relevant, it is admissible for any legitimate purpose other than to prove the character of the defendant. *Id.* at ¶ 14, 593 N.W.2d at 798. Even if the evidence is relevant and offered for an acceptable purpose, SDCL 19–12–3[4] (FRE 403) acts as a type of safeguard that allows evidence of other acts to be excluded if its probative value is substantially outweighed by other factors such as unfair prejudice. It is important to remember, however, that because virtually all relevant evidence presented at trial is harmful to the other party, this is not what is meant by unfair prejudice. To cause unfair prejudice, the evidence must persuade the jury in an unfair and illegitimate way. As we stated in *State v. Steichen:*

Prejudicial evidence is that which has the capacity to persuade the jury by illegitimate means which results in one party having an unfair advantage. Evidence is not prejudicial merely because its legitimate probative force damages the defendant's case. Even though the admission of acts evidence "will usually result in such prejudice, it will not be admitted only if that prejudice is unfair."

1998 SD 126, ¶ 27, 588 N.W.2d 870, 876 (additional citations omitted) (internal quotations omitted). Moreover, admission of the evidence is favored under SDCL 19–12–3, and the judicial power to exclude such evidence should be used sparingly. *Wright,* 1999 SD 50, ¶ 15, 593 N.W.2d at 799.

[¶ 12.] In determining whether other acts evidence is admissible, a two-part test applies:

(1) Whether the intended purpose for offering the evidence the other acts evidence is relevant to some material issue in the case (factual relevancy), and

(2) Whether the probative value of the evidence is substantially outweighed by its prejudicial effect (logical relevancy).

*State v. Anderson,* 2000 SD 45, ¶ 92, 608 N.W.2d 644, 669 (citing *State v. Moeller,* 1996 SD 60, ¶ 13, 548 N.W.2d 465, 472) (citing *State v. Steele,* 510 N.W.2d 661, 667 (S.D.1994)). In the case at hand, the trial court determined that the other bad act evidence was relevant, but decided its

---

3. According to SDCL 19–12–1 (FRE 401): "Relevant evidence" means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence.

4. SDCL 19–12–3 (FRE 403) provides:

Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.

prejudicial value outweighed its probative value. In so deciding, the trial court stated, "I find it very prejudicial because there is always that danger that a jury is simply going to receive this evidence ... [and] they are going to assume that this evidence is suggestive of this person having committed this [act] and that he acted this way on a particular occasion." Therefore, the trial court excluded testimony regarding Heather Byrd's claims against McEldowney. We find this to be an abuse of discretion.

[¶ 13.] One legitimate purpose of the use of other acts evidence under SDCL 19–12–5 is intent. In her claims against McEldowney, Dawn claimed battery, sexual harassment and intentional infliction of emotional distress. Quite obviously, intent is an element of these causes of actions. *See Burlington Industries, Inc. v. Ellerth,* 524 U.S. 742, 743, 118 S.Ct. 2257, 2260, 141 L.Ed.2d 633, 638 (stating that "sexual harassment ... presupposes intentional conduct"). Therefore, in order to prevail, Dawn had to prove intent. As we stated in *Veeder v. Kennedy,* 1999 SD 23, ¶ 43, 589 N.W.2d 610, 620:

> [This cause of action] is an intentional tort and it was necessary for [plaintiff] to prove intent to proceed with his case. SDCL 19–12–5 specifically recognizes "intent" may be proved by "evidence of other ... wrongs, or acts...." As the defendant rarely admits the crucial element of intentional wrongful conduct, it must be established by the plaintiff through circumstantial evidence to avoid being nonsuited.

[¶ 14.] In this case, McEldowney either denied the alleged actions or claimed he had committed them innocently.[5] Clearly then, McEldowney's intent was at issue.

Therefore, Dawn should have been able to use extrinsic evidence to prove intent. *See State v. Champagne,* 422 N.W.2d 840, 843 (S.D.1988) (stating "where specific intent is an element of an offense, proof of similar acts may be admitted to carry that burden even if the defense to the charge is a complete denial").

[¶ 15.] Further, in allowing other acts evidence to prove intent, there are two important factors that this Court must consider: (1) similar victims and (2) similar crimes. *Moeller,* 1996 SD 60, ¶ 28, 548 N.W.2d at 475 (additional citations omitted). Dawn and Heather both worked for the Defendant on his property. Although Heather was not formally employed by McEldowney, she performed various chores, such as cooking and cleaning. Both Dawn and Heather's families depended on McEldowney for their livelihoods. Both women told McEldowney they would tell their husbands if his alleged acts did not stop. Many of the alleged acts happened in homes that were owned by McEldowney, either his farm house, or in the house where he allowed the Novaks to live. Additionally, both of these women worked in close proximity to McEldowney and most of the alleged acts occurred when no one else was present. In reviewing the record, it appears that the alleged acts are also similar in nature and occurred just days apart. It is claimed that McEldowney made sexually suggestive comments and committed unwanted touching to both Dawn and Heather.

[¶ 16.] Not only should the other bad act evidence have been admitted to prove McEldowney's intent, it alternatively could have been admitted to show a com-

5. For example, McEldowney admitted during his testimony at trial that he had smelled Dawn's hair and skin, looked down the front of her shirt, told her dirty jokes, showed her pictures of scantily clad women, and discussed the Clinton/Lewinsky sexual scandal.

mon plan. SDCL 19–12–5. "All that is required to show a common plan is that the charged and uncharged events 'have sufficient points in common.'" *Wright*, 1999 SD 50, ¶ 19, 593 N.W.2d at 800 (additional citations omitted). Here, there are several similarities between the two victims. Both women worked for McEldowney on his farm, both women's husbands were employed by McEldowney, and both women claimed similar acts were committed by McEldowney. Accordingly, Heather's testimony would have established a clear connection between the acts committed upon herself and upon Dawn; therefore, its probative value substantially outweighed its prejudicial effect.

[¶ 17.] We have previously stated that "[a]nother consideration in the potential admission of 404(b) evidence is the availability of other evidence." *Smith*, 1999 SD 83, ¶ 21, 599 N.W.2d at 350 (citing *State v. White*, 538 N.W.2d 237, 243 (S.D. 1995)). Nearly all of the acts alleged by Dawn and Heather took place with no one else present. When Heather's testimony was excluded from the trial, the case turned into Dawn's word against McEldowney's word. Thus, the probative value of the other bad act evidence was significant. In this case, the other bad act evidence was clearly necessary for Dawn to prove her case. A review of the record shows that the trial court did not take this into consideration when it made its decision to exclude the bad act testimony. We hold that this was an abuse of discretion to exclude this evidence. We reverse and remand on this issue.

[¶ 18.] **2. Whether the trial court abused its discretion when hit excluded testimony regarding an alleged incident that occurred in 1995.**

[¶ 19.] The trial court ruled that a certain alleged act committed by McEldowney was outside the applicable statute of limitations. Specifically, this alleged incident occurred in August of 1995 when McEldowney ran his hand up Dawn's crotch, which McEldowney denies. Dawn claims that this incident is part of the continuing tort of sexual harassment. We disagree with this assertion.

[¶ 20.] Although we have held that in certain incidences a statute of limitations may be tolled when a tort has been continuos or ongoing, the facts of the instant case do not support such a theory. *See, e.g., Holland v. City of Geddes*, 2000 SD 71, ¶ 5, 610 N.W.2d 816, 818. Dawn has failed to establish any continuity between the 1995 incident and the alleged incidents that occurred in 1997 and 1998. Although while it may be true that Dawn was not formally employed on the farm until 1997, she did occasionally help out with various farm work in between these two dates; she still had contact with McEldowney during this time period. Therefore, the alleged 1995 incident was not part of a continuing tort, but rather, it is better characterized as a separate, independent incident.

[¶ 21.] While this alleged 1995 incident could arguably have been admitted as an other bad act, this was not argued on appeal. We find that the alleged 1995 incident is outside the applicable statute of limitations, and it was not an abuse of discretion to exclude it. *See* SDCL 15–2–14(3) (providing for a three-year statute of limitations for personal injury); SDCL 20–13–31 (providing for filing of any charge of discrimination within one hundred and eighty days of the alleged practice); SDCL 15–2–15(1) (providing for a two-year statute of limitations for battery).

[¶ 22.] KONENKAMP, Justice, ENG and DELANEY, Circuit Judges, and AMUNDSON, Retired Justice, concur.

[¶ 23.]  ENG, Circuit Judge, sitting for SABERS, Justice, disqualified.

[¶ 24.]  DELANEY, Circuit Judge, sitting for ZINTER, Justice, disqualified.

[¶ 25.]  MEIERHENRY, Justice, not having been a member of the Court, at the time this action was submitted to the Court, did not participate.