2003 SD 64

**STATE of South Dakota, Plaintiff and Appellee,**

v.

**David CHRISTENSEN, Defendant and Appellant.**

**Nos. 22442, 22443.**

Supreme Court of South Dakota.

Argued March 26, 2003.

Decided May 28, 2003.

Lawrence E. Long, Attorney General, Craig M. Eichstadt, Deputy Attorney General, Pierre, South Dakota, Attorneys for plaintiff and appellee.

Phillip O. Peterson, Clay County Public Defender, Beresford, South Dakota, Attorney for defendant and appellant.

GILBERTSON, Chief Justice.

[¶ 1.] David Christensen (Christensen) was convicted of possession of marijuana and two counts of possession of child pornography. We affirm his conviction.

## FACTS AND PROCEDURE

[¶ 2.] On June 29, 2001, a day after Christensen was detained at the Human Services Center (HSC) in Yankton, South Dakota for a psychological evaluation, his neighbor in Irene, South Dakota was granted a protection order against him.[1] Christensen was served notice of this order while at HSC. As part of that order, Christensen was to surrender all of his firearms to the Clay County Sheriff. The protection order also gave the Sheriff the power to take necessary steps to obtain the firearms if they were not surrendered. After waiting approximately 48 hours for compliance by Christensen, Clay County Sheriff Passick, Irene Police Chief Nelson and Deputy Sheriff Howe went to Christensen's residence in Irene to obtain the guns.

[¶ 3.] Upon entering the unlocked residence, the officers saw marijuana, marijuana paraphernalia and several weapons, including loaded high-powered assault weapons. The law enforcement officers took the guns and went to Vermillion to apply for a search warrant for various drugs and paraphernalia. The circuit

---

1. This neighbor lived across the street from Christensen's residence. The neighbor alleged Christensen had been threatening him with bodily harm for approximately two years. Such threats included that Christensen would "take care of him" and "no one would sleep that night." The neighbor had also allegedly heard gun shots around or in Christensen's residence.

court judge granted the warrant which gave the officers authority to search Christensen's residence for drugs, drug paraphernalia, illegal weapons, and items which showed an intent to distribute drugs.

[¶ 4.] While the law enforcement officers were executing the warrant at Christensen's residence, they came across a trunk in his bedroom, which they opened. Inside the trunk were various videotapes, some with sexually suggestive titles [2] and photographs that depicted nude female children. During the course of the search, over a pound of marijuana and homemade "surveillance" videos [3] of young female children were also found. Additionally, magazines for small children such as "Nickelodeon" and "Jack and Jill" were discovered, although no children lived in the residence.

[¶ 5.] A separate search warrant was then granted by the circuit court that authorized the officers to view the videotapes and magazines. Most of the contents of these videos and magazines were admitted at trial, over Christensen's objections. Ultimately, Christensen was charged with 77 counts of possession of child pornography and one possession of marijuana. After a jury trial, he was convicted on two counts

of possession of child pornography and for the possession of marijuana, from one to ten pounds. Christensen received a five-year prison sentence for the possession of marijuana, and one year each for the convictions of possession of child pornography, for violation of SDCL 22–22–23.1.[4] The convictions of child pornography are to run concurrently to each other, but consecutively with the five-year possession of marijuana conviction.

[¶ 6.] Christensen raises the following issues for appeal:

1. Whether exigent circumstances were present to justify the officers' entry without a search warrant into Christensen's home in order to obtain the weapons.

2. Whether the trial court should have suppressed the videos and magazines found in the search of Christensen's residence.

3. Whether the "surveillance" videos were properly admitted at trial as "other acts evidence" to show Christensen's intent in possessing the alleged child pornography.

## STANDARD OF REVIEW

 [¶ 7.] Factual findings by the trial court are reviewed under the clear

---

**2.** The videos had titles such as "Czech Children's Days" and "Nudist Moms and Daughters."

**3.** It is alleged by the State that Christensen secretly followed a number of little girls around Yankton, Vermillion, and Irene and videotaped them. One tape is a surveillance video made through a backyard fence into a neighbor's swimming pool area, which focuses on a very small girl in a swimming suit. On some of the "surveillance" videos, Christensen allegedly made verbal comments that have sexual overtones about the little girls. Another tape is of a little girl playing in her backyard. Comments such as "looks good," moans of "Ummm" and "Oh yes," can be heard when the little girl lifts her dress. Other tapes recovered from Christensen's house

contain footage copied from television containing footage of little girls, little girls' beauty pageants and the Jon Benet Ramsey case.

**4.** SDCL 22–22–23.1, as it existed in 2001, provided:

Any person who knowingly possesses any book, magazine, pamphlet, slide, photograph, or film depicting a minor under the age of eighteen years engaging in a prohibited sexual act or in the simulation of such act or whose knowing possession encourages, aids, abets, or entices any person to commit a "prohibited sexual act" is guilty of a Class 6 felony.

This statute has been repealed by SL 2002, ch. 109, § 3.

error standard of review. *State v. Lamont*, 2001 SD 92, ¶ 21, 631 N.W.2d 603, 610 (citing *State v. Morato*, 2000 SD 149, ¶ 10, 619 N.W.2d 655, 659) (citations omitted). However, "in reviewing decisions on motions to suppress for asserted constitutional violations our standard of review is de novo." *Id.* (quoting *Morato*, 2000 SD 149, ¶ 10, 619 N.W.2d at 659) (additional citations omitted). This Court will not be restricted by the trial court's "legal rationale for upholding the entry." *Lamont*, 2001 SD 92, ¶ 21, 631 N.W.2d at 610.

■ [¶ 8.] In admitting evidence as other acts evidence, the trial court will not be reversed absent an abuse of discretion. *Novak v. McEldowney*, 2002 SD 162, ¶ 7, 655 N.W.2d 909, 912 (citations omitted). Furthermore, the evidentiary ruling must be shown to be prejudicial error. *Id.*

### ANALYSIS AND DECISION

[¶ 9.] **1. Whether exigent circumstances were present to justify the officers' entry without a search warrant into Christensen's home in order to obtain the weapons.**

[¶ 10.] Christensen argues that his Fourth Amendment rights were violated when the officers entered his residence without a search warrant to obtain the guns. Further, he asserts that the officers knew that he was being held at HSC and was aware that he had been trying to contact a friend to lock his house and give his guns to the officers. The State contends that the officers' actions were justified because of "exigent" circumstances, and that the protection order gave them the authority to take whatever steps deemed necessary to obtain the guns.

■ [¶ 11.] The Fourth Amendment of the Constitution guarantees citizens the protection from the unlawful searches and seizures by government actors. U.S. Const. amend. IV, SD Const., art. VI, § 11. An individual must have a reasonable expectation of privacy in the place searched or the article seized before the Fourth Amendment will apply. *Katz v. United States*, 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576. Normally, police officers must obtain a warrant based on probable cause issued by a judge in order to seize someone's property. *See State v. DeLaRosa*, 2003 SD 18, ¶ 7, 657 N.W.2d 683, 685 (citing *Terry v. Ohio*, 392 U.S. 1, 20, 88 S.Ct. 1868, 1879, 20 L.Ed.2d 889, 905 (1968)).[5]

---

5. While the State does not argue that the domestic protection order in this case is the sole justification for upholding the legality of the search and seizure, it is important to note that the requirements for the issuance of a search warrant and a domestic protection order are very similar. Under SDCL 23A–35–4 a search warrant shall issue on evidence set forth in an affidavit establishing to the committing magistrate probable cause to believe the grounds for the issuance of the warrant exist. Under SDCL 25–10–3(2), a protection order shall be issued when a petition accompanied by an affidavit establishes to the satisfaction of the court that domestic abuse, as defined in SDCL 25–10–1(1), has occurred or the applicant is in fear of imminent physical harm or bodily injury.

Herein the domestic protection order application and affidavit of the applicant stated: This has been an on going thing with him approx 2 yrs ago he said he would kill me if I stepped outside—has yelled & screamed at my wife and myself many times, we have heard gunshots twice in the last month. I leave for work early in the morning, I fear for my wife's safety when I leave. On Sun June 24th he said he "was going to take care of me, and no one would sleep that night." A shot was fired that night.
I request he surrender all firearms to the Clay County Sheriff, and that the Clay County Sheriff be granted authority to enter his residence to confiscate all fire arm[s] immediately.
Circuit Judge Eng upon review of this affidavit issued a domestic protection order

[¶ 12.] It is the State's burden to show that a warrantless entry into a protected area was justified. *Vale v. Louisiana*, 399 U.S. 30, 34, 90 S.Ct. 1969, 1972, 26 L.Ed.2d 409 (1970); *State v. Meyer*, 1998 SD 122, ¶ 20, 587 N.W.2d 719, 723 (citations omitted). If exigent circumstances are present, then the police may be justified in entering a person's residence without a warrant. *Lamont*, 2001 SD 92, ¶ 22, 631 N.W.2d at 610 (stating that "[t]he exigency exception exists because some situations dictate immediate police response rather than delay to obtain a warrant from a judge"). "Exigent circumstances exist when there is a situation that demands immediate attention and there is no time to get a warrant." *State v. Wilson*, 2000 SD 133, ¶ 19, 618 N.W.2d 513, 520 (citing *State v. Buchholz*, 1999 SD 110, ¶ 18, 598 N.W.2d 899, 903 (citing *State v. Hanson*, 1999 SD 9, ¶ 35, 588 N.W.2d 885, 892)).

[¶ 13.] In determining whether exigent circumstances exist, "it is important to point out ... that safety factors are a valid consideration." *State v. Boll*, 2002 SD 114, ¶ 48, 651 N.W.2d 710, 722-23 (Konenkamp, J, concurring specially) (citing *Mincey v. Arizona*, 437 U.S. 385, 392-93, 98 S.Ct. 2408, 2413, 57 L.Ed.2d 290 (1978);

*Michigan v. Tyler*, 436 U.S. 499, 509-10, 98 S.Ct. 1942, 1950, 56 L.Ed.2d 486 (1978)). Moreover, in *United States v. Antwine*, 873 F.2d 1144 (8th Cir.Ct.App.1989), the Eighth Circuit Court of Appeals held that a warrantless search for a gun inside defendant's house was not unconstitutional. In that case, the officers went into defendant's house, after he had been arrested in his yard, to retrieve a gun that defendant had earlier displayed. 873 F.2d at 1146. The officers were concerned for the safety of the two children who were inside the house. That court found that "the clear implication of [*New York v. Quarles*] is that a warrantless seizure of a weapon may be considered 'reasonable' within the meaning of the Fourth Amendment when justified by an officer's legitimate concern for someone's safety." *Id.* at 1147 (citing *Quarles*, 467 U.S. 649, 104 S.Ct. 2626, 81 L.Ed.2d 550 (1984)).

[¶ 14.] In this case, under this particular set of facts, we find that the officers' entry into Christensen's home to retrieve the weapons when the protection order provided for such action, and because of the exigency of the situation, did not violate Christensen's Fourth Amendment rights.[6]

which in part directed: "Respondent surrender all firearms to the Clay County Sheriff. If they are not surrendered, the Clay County Sheriff is to take steps necessary to obtain firearms."
Clearly the applicant for the domestic protection order had established probable cause to believe his claims were correct, that the guns were in Christensen's house and that the applicant was entitled to the relief he sought.
This is not to say that a proper protection order will in all cases satisfy the requirements of the Fourth Amendment. However, in this instance it clearly bolsters the State's argument that exigent circumstances justified the entry into Christensen's home and the seizure of the contraband, especially the firearms which presented an

immediate threat to Christensen's neighbors and potentially the public.

6. The transcript of the January 18, 2002 hearing in which the trial court heard evidence concerning Christensen's motion to suppress was not made part of the record. However, several other significant items were in the record that support the argument that the terms of the protection order gave the officers authority to enter the premises and that exigent circumstances were present. First, the trial court's order, which denied Christensen's motion to suppress, states that the terms of the protection order gave the officers authority to enter the premises and the exigent circumstances were present. Second, the protection order and the affidavit in support of such order were made part of the record.

[¶ 15.] No one else was in his home to surrender the guns to law enforcement. Moreover, the house was unlocked and unwary children could have entered to take possession of loaded firearms. The fact that guns were in that house was clearly known to the local residents which presented the potential of their theft and improper subsequent use.

[¶ 16.] Christensen, who was mentally unstable to the point of being placed at HSC at the time that the officers entered his home, had made threats to neighbors and other people around the town of Irene. He also had admitted to law enforcement officers that he often was armed and wore a bullet proof vest. Because the officers knew that Christensen had several firearms in his residence, and that he was going to be released from HSC at any time, their belief that the weapons posed a serious threat to the safety of the public was reasonable. *See Lamont,* 2001 SD 92, ¶ 21, 631 N.W.2d at 610 (determining that in assessing whether the Fourth Amendment has been violated, the officers' actions must be analyzed to determine if their actions were objectively reasonable). Further, this threat was apparent by the express terms of the protection order. The order gave Christensen notice that he must hand over all of his weapons to law enforcement, or otherwise, law enforcement would take whatever steps necessary to make sure that the firearms were recovered. Although Christensen argues that the officers knew that he had been trying to make arrangements with a friend to obtain the firearms and turn them over, this friend could have given the firearms back to Christensen in violation of the protection order.

[¶ 17.] Christensen next argues that the "plain view" exception to the warrant requirement does not apply in this case because the marijuana and paraphernalia were observed when the officers were unlawfully in the residence. However, because we held above that the officers were lawfully inside Christensen's residence to obtain the firearms, the marijuana and other incriminating evidence were within their "plain view" and therefore, this exception to the warrant requirement applies. *See State v. Wellner,* 318 N.W.2d 324, 329 (S.D.1982) (holding that if a law enforcement officer is lawfully engaged in an activity in a particular place, and they view a suspicious object, they may seize it immediately).

[¶ 18.] **2. Whether the trial court should have suppressed the videos and magazines found in the search of Christensen's residence.**

[¶ 19.] Having determined that the officers' entry was reasonable and not in violation of Christensen's Fourth Amendment rights, we next turn to whether certain videotapes that were discovered during the course of searching the residence pursuant to a validly executed warrant were properly admitted against Christensen at trial.

[¶ 20.] In the course of obtaining Christensen's firearms, the officers saw many incriminating items in his residence, such as marijuana and marijuana paraphernalia. Instead of seizing these items, they first went to the circuit judge and obtained a warrant to search the residence. Although the search warrant provided that the search was for drugs, drug paraphernalia, illegal weapons, and items to indicate an intent to distribute drugs,

---

Finally, the officers' application for the search warrant set out law enforcement's contact with Christensen, including that he was in the HSC, he was attempting to contact others to retrieve the guns for him, and that it had been two days since receiving the requirement that he turn over his guns without any action.

the State claims that the pornographic materials were seized pursuant to the "plain view" exception to the warrant requirement.

[¶ 21.] We agree with the State and hold that the pornographic materials found in Christensen's residence were properly seized and it was not error for them to be subsequently admitted at trial. In *State v. Larkin,* we stated that "where a police officer while in the course of a lawful search pursuant to a valid search warrant inadvertently uncovers evidence of another crime ... the police officer may seize the evidence although it is not described in the warrant." 87 S.D. 61, 64–5, 202 N.W.2d 862, 864 (1972) (citations omitted). Furthermore, according to *Larkin,* 87 S.D. at 65, 202 N.W.2d at 864:

> The cases recognizing this exception have emphasized that before such a seizure will be lawful, the original search must be directed in good faith toward finding objects described in the search warrant and, in addition, the police officer must have probable cause to believe the inadvertently discovered evidence is in fact seizable.

[¶ 22.] In the instant case, the police officers were conducting a thorough search of Christensen's residence in order to find illegal drugs, paraphernalia and firearms. When they discovered the trunk, it was reasonable for them to look inside to find such items. Instead, they found sexually explicit material which contained images of nude children and sexually suggestive titles of movies. Christensen argues that the officers did not have probable cause to believe that the tapes and magazines were seizable simply because the materials contained depictions of nude children.

[¶ 23.] The probable cause standard has been defined in *State v. Zachodni,* 466 N.W.2d 624, 629 (S.D.1991). According to

*Zachodni,* probable cause justifying a search exists if "the facts found by the court or the magistrate would lead a reasonable and prudent person to believe it fairly probable that a crime had been committed and that evidence relevant to the crime would be uncovered by the search." *Id,* at 629 (additional citations omitted). Furthermore, the probable cause determination is a function of "the totality of relevant circumstances." *Id.* (citations omitted).

[¶ 24.] When the law enforcement officers saw videotapes with suggestive titles together with magazine covers containing pictures of naked children, it provided evidence of a possible crime. Quite obviously, in view of the "totality of relevant circumstances," a reasonable and prudent person would view such material as relevant evidence of a crime. We, therefore, hold that this evidence was properly admitted against Christensen at trial.

[¶ 25.] **3. Whether the "surveillance" videos were properly admitted at trial as "other acts evidence" to show Christensen's intent in possessing the alleged child Pornography.**

[¶ 26.] In this final issue, Christensen argues that the "surveillance" videos were improperly admitted against him at trial. First, he asserts that there was no evidence that the surveillance videos were taken by Christensen or that it is his voice making the sexual comments about the children that were videoed. Second, he argues that the mental status of defendant was not relevant as to whether the material is child pornography. The trial court granted the State's motion to use the videos at trial to show Christensen's state of mind and intent of viewing nude depictions of small children. However, the trial court excluded some of the tapes; it

only allowed into evidence the tapes that had comments allegedly made by Christensen on them.

[¶ 27.] Under SDCL 19–12–5 (FRE 404(b)), evidence may be admissible for reasons other than showing that a defendant has a propensity to commit the offense charged. This statute provides:

> Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

Furthermore, this is a rule of inclusion and the trial judge may exclude such evidence only on the basis of prejudice, confusion, or waste of time. *See* SDCL 19–12–3 (FRE 403); *State v. Wright*, 1999 SD 50, ¶ 13, 593 N.W.2d 792, 798. However, before other acts evidence can be admitted, they must be shown to be relevant. According to *Wright*, 1999 SD 50, ¶ 14, 593 N.W.2d at 798–99:

> Relevance under § 404(b) is established "only if the jury can reasonably conclude that the act occurred and that the defendant was the actor." Furthermore, the relevance of § 404(b) evidence is determined by a lower standard of proof than that required for a conviction. SDCL 19–9–8 (Rule 104(b)). The proponent has the burden of showing the relevance of the other crimes, wrongs, or acts. *See* SDCL 19–12–1 (Rule 401); SDCL 19–12–2 (Rule 402); SDCL 19–12–5 (Rule 404(b)).

[¶ 28.] The trial court did not abuse its discretion when it allowed the tapes into evidence. The State, as part of its case, had to prove each element of SDCL 22–22–23.1. This statute provided that the person must "knowingly" possess the por-

nographic material. Therefore, the State had to prove beyond a reasonable doubt that Christensen had the requisite intent of possessing the child pornography. Therefore, the surveillance videos could properly be used to show that this intent was present. Moreover, as the State argues, "Christensen's possession of the tapes upon which implicit sexual statements were made about little girls suggests his intent and his thought process." Under the standards of *Wright*, they were properly admitted. Not only is Christensen unable to show that the trial court abused its discretion, he is also unable to show how he was prejudiced.

[¶ 29.] KONENKAMP and ZINTER, Justices, concur.

[¶ 30.] MEIERHENRY, Justice, concurs in result.

[¶ 31.] SABERS, Justice, concurs in part and dissents in part.

MEIERHENRY, Justice (concurring in result).

[¶ 32.] I concur in result, but write specially on Issue I.

[¶ 33.] I would affirm the trial court's ruling because Christensen did not preserve this issue for appeal. The hearing in which the trial court determined that the initial entry of Christensen's home without a warrant was lawful was not transcribed for this Court's review. Without a transcript of the hearing, we cannot say whether the state did or did not present sufficient evidence of exigent circumstances to justify the warrantless entry of Christensen's residence. We can only presume the trial court ruled properly. We have consistently held with an incomplete appellate record we presume that the trial court acted correctly. *State v. Corey*, 2001 SD 53, ¶ 12, 624 N.W.2d 841, 844.

SABERS, Justice (concurring in part and dissenting in part).

[¶ 34.] I concur on Issues 1 and 2 but dissent on Issue 3. It seems clear that these "surveillance" videos were admitted to show that the defendant had a propensity to commit the offenses charged. This is contrary to SDCL 19–12–5, which provides in part:

> Evidence of other ... acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith.

[¶ 35.] That is exactly what happened in this case and the State's claim of showing "intent" is mere pretense. Unfortunately, this will continue to happen until we force the State to do it over until they do it right.