#23951-r-DG

**2007 SD 22**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

\* \* \* \*

STATE OF SOUTH DAKOTA,                          Plaintiff and Appellant,

  v.

STEVEN R. PURSLEY,                          Defendant and Appellee.

\* \* \* \*

APPEAL FROM THE CIRCUIT COURT OF
THE SEVENTH JUDICIAL CIRCUIT
PENNINGTON COUNTY, SOUTH DAKOTA

\* \* \* \*

HONORABLE MERTON B. TICE, JR.
Judge

\* \* \* \*

LAWRENCE E. LONG
Attorney General

KATIE L. HANSEN
Assistant Attorney General
Pierre, South Dakota                          Attorneys for plaintiff
                        and appellant.


MICHAEL STONEFIELD
Office of the Public Defender
  for Pennington County
Rapid City, South Dakota                          Attorneys for defendant
                        and appellee.

\* \* \* \*

ARGUED JANUARY 10, 2007

OPINION FILED **02/28/07**

#23951

GILBERTSON, Chief Justice

[¶1.] While on parole for a prior conviction, Steven R. Pursley (Pursley) was charged with possession of a controlled substance, in violation of SDCL 22-42-5, and possession of marijuana, in violation of SDCL 22-42-6. Pursley moved to suppress evidence of possession arguing that it had been illegally obtained through a search without reasonable suspicion in violation of the Fourth Amendment to the United States Constitution, Article IV, section 11 of the South Dakota Constitution and in violation of the provisions of his parole agreement with the South Dakota Department of Corrections, Board of Pardons and Paroles (the Board). On December 20, 2005, the South Dakota Seventh Judicial Circuit issued its decision granting Pursley's motion. On January 12, 2006, the State filed a petition with this Court seeking permission to file an intermediate appeal. On February 24, 2006, this Court issued an order granting the appeal. We reverse.

## FACTS AND PROCEDURE

[¶2.] Pursley was incarcerated in the South Dakota State Penitentiary following a November 2003 conviction for the offense of accessory to first degree manslaughter. On November 18, 2004, Pursley was granted parole by the Board. Pursley's parole was conditioned upon the provisions of the Supervision Agreement (the Agreement) that he entered into with the Board. Pursley signed the Agreement prior to his release on October 15, 2004, and again on the day that his parole commenced, November 18, 2004. In agreeing to these provisions, Pursley acknowledged that his parole was subject to the Board's supervision and that it had the authority to revoke his parole for any violations thereof. Parole Agent Brian Robb (Robb) was assigned to supervise Pursley.

-1-

[¶3.]     As part of the Agreement, Pursley was required to abstain from the use or possession of alcohol and illegal drugs.  The Agreement included a search and seizure provision prefaced on a parole agent's or law enforcement's "reasonable suspicion" that Pursley was in violation of its terms.[1]  Pursley was also subject to "Special Limitations" as provided under paragraph 13 of the Agreement.  These included his agreement to participate and cooperate as directed in alcohol and drug treatment and random urinalysis (UA) and preliminary breath tests (PBT) as provided under paragraph 13e.[2]  When Pursley signed the Agreement his signature was directly below an acknowledgement that he had read and understood the Agreement.

---

1.     Specifically, paragraph 5, "SEARCH and SEIZURE" provided:

> I will submit my person, property, place of residence, vehicle and personal effects to search at any time, with or without a search warrant, whenever reasonable suspicion is determined by a parole agent or law enforcement.

2.     The introductory language of paragraph 13 "SPECIAL LIMITATIONS" stated:

> I will faithfully comply with special limitations and conditions imposed by the Court, the Board of Pardons and Paroles, and my Parole Agent as follows[.]

Following this introductory statement, the paragraph included several checkbox provisions.  Subparagraph "e" was a checkbox provision included in Pursley's supervision agreement.  The introductory language of subparagraph "e" stated:

> I will participate, cooperate and complete any programs as directed[.]

Additional checkboxes followed this statement.  Programs that Pursley agreed to under subparagraph "e" included "Alcohol/Drug Treatement [*sic*]/Aftercare/AA/NA" and "Random UA's and PBT's."

[¶4.]     Robb's supervision program included approximately two scheduled meetings per month in his office with Pursley as well as unscheduled visits to Pursley's residence.  Through discussions with Pursley during these meetings, Robb became aware that Pursley had problems with illegal drug use prior to his incarceration.  Robb directed Pursley to participate in a substance abuse aftercare program as provided for in the Agreement under the "Special Limitations" of paragraph 13e.  Pursley's participation in this program was less than satisfactory.  As a consequence, on one occasion Robb had him incarcerated for two days.  During several of the office visits, Robb requested Pursley to submit to UAs.  Pursley complied with the requests and initially the results of these tests were negative for evidence of drug use.

[¶5.]     On or before March 11, 2005, Robb received an anonymous telephone call from a person who stated that Pursley had been using illegal drugs.  As a result of this call and Pursley's admission of prior drug use, Robb contacted Pursley and asked him to submit to a UA.  On March 11, 2005, Pursley came to Robb's office where the sample was collected.  The results of this UA were negative.

[¶6.]     Still concerned Pursley might be violating the provisions of the Agreement, Robb again asked Pursley to submit to a UA at their scheduled meeting on April 1, 2005.  The results from this UA were positive for methamphetamine.  Robb discussed these results with Pursley during their scheduled meeting on April 18, 2005.  Pursley admitted to Robb that he had used methamphetamine.  Robb asked Pursley to submit to another UA at this meeting.  Robb performed an on-site analysis that indicated positive for methamphetamine and marijuana.  Pursley then

admitted to using marijuana and methamphetamine again. Pursley's parole was revoked and he was taken into custody by Robb at that time.

[¶7.] Robb provided the results of the UAs to the Pennington County State's Attorney. Pursley was subsequently indicted for violation of SDCL 22-42-5, possession of a controlled substance. The state's attorney also charged him with being a habitual criminal.

[¶8.] Pursley filed a motion with the circuit court to suppress evidence relating to the new charges[3] alleging that his rights under the Fourth Amendment to the United States Constitution and Article IV, section 11 of the South Dakota Constitution had been violated when he was required to submit to a UA on April 1, 2005, absent reasonable suspicion. Pursley also argued in his brief in support of the motion that requiring him to submit to a UA without reasonable suspicion was a violation of the provisions of the Agreement.

[¶9.] Following a hearing the circuit court issued its written decision, incorporated into its findings of fact and conclusions of law, granting Pursley's motion. This Court granted a request by the State for permission to file an intermediate appeal of the circuit court's decision to suppress. The State raises the following issues on appeal:

> 1. Whether Parole Agent Robb needed reasonable suspicion to request Pursley to submit to a UA.

---

3. Citing *Pennsylvania Board of Probation and Parole v. Scott*, 524 US 357, 368, 118 SCt 2014, 2022, 141 LEd2d 344 (1998) (holding that the exclusionary rule does not apply to parole revocation hearings), Pursley conceded that his parole was not unlawfully revoked. Hence, Pursley's parole revocation is not an issue before this Court.

2. If required, whether Robb had reasonable suspicion.

## STANDARD OF REVIEW

[¶10.] Interpretation of a contract, such as a parole agreement, is a question of law, reviewed de novo. Prunty Const., Inc. v. City of Canistota, 2004 SD 78, ¶10, 682 NW2d 749, 753 (citing Fenske Media Corp. v. Banta Corp., 2004 SD 23, ¶8, 676 NW2d 390, 393). This Court gives no deference to a circuit court's conclusions of law and applies the de novo standard. State v. Schouten, 2005 SD 122, ¶9, 707 NW2d 820, 822-23 (citing City of Deadwood v. Summit, Inc., 2000 SD 29, ¶9, 607 NW2d 22, 25). A circuit court's findings of fact are reviewed under the clearly erroneous standard. State v. Aaberg, 2006 SD 58, ¶8, 718 NW2d 598, 600 (citing State v. Mattson, 2005 SD 71, ¶14, 698 NW2d 538, 544-45 (citing State v. De La Rosa, 2003 SD 18, ¶5, 657 NW2d 683, 685)).

## ANALYSIS AND DECISION

[¶11.] **Whether Parole Agent Robb needed reasonable suspicion to request Pursley to submit to a UA.**

[¶12.] Pursley concedes that the United States Supreme Court's decision in *Samson v. California,* __US__, 126 SCt 2193, 165 LEd2d 250 (2006), now precludes the Fourth Amendment argument he successfully made in support of his motion to suppress.[4] Pursley's argument, that the circuit court's suppression order should be affirmed, now rests on his assertion that general principles of contract construction

---

4. In fairness to the circuit court, *Samson* had not been decided at the time the circuit court made its decision on the Fourth Amendment argument.

apply to the interpretation of the Agreement. For purposes of this contractual analysis, we must assume that reasonable suspicion did not exist.

[¶13.] Pursley cites *Ziegler Furniture and Funeral Home, Inc. v. Cicmanec*, 2006 SD 6, ¶25, 709 NW2d 350, 357; *Campion v. Parkview Apartments*, 1999 SD 10, ¶34, 588 NW2d 897, 903; and, *Hicks v. Brookings Mall, Inc.*, 353 NW2d 54, 56 (SD 1984), for the contract principle that ambiguities should be construed against the drafter. The circuit court concluded and Pursley argues that when read together, paragraphs 5 and 13e of the Agreement are ambiguous or conflicting and therefore should be construed in his favor to require that there be reasonable suspicion before he can be requested to submit a UA. We disagree with the conclusion that the Agreement is ambiguous as to these provisions.

> In interpreting a contract, we seek to ascertain and give effect to the intention of the parties; at the same time, to find the intention of the parties, we rely on the contract language they actually used. . . . It is a fundamental rule of contract interpretation that the entire contract and all its provisions must be given meaning if that can be accomplished consistently and reasonably. However, when provisions conflict and full weight cannot be given to each, "the more specific clauses are deemed to reflect the parties [sic] intentions-a specific provision controls a general one."

*Prunty Const., Inc.*, 2004 SD 78, ¶16, 682 NW2d at 756 (quoting Carstensen Contracting, Inc. v. Mid-Dakota Rural Water Sys., Inc., 2002 SD 136, ¶8, 653 NW2d 875, 877) (internal citations omitted).

[¶14.] We conclude that a fair reading of the Agreement reveals that paragraph 5 is a general provision requiring reasonable suspicion for all parolee searches and seizures. The "Special Limitations" provisions of paragraph 13e list UAs and PBTs as specific exceptions to the reasonable suspicion requirement.

Paragraph 13e unambiguously required Pursley to submit to UAs and PBTs as the checkbox provision covering those tests is marked and follows the clear, introductory language that states, "I will participate, cooperate and complete any programs as directed[.]" Moreover the checkbox provision expressly prefaces the tests as being *random* UAs and PBTs.

[¶15.] Random is defined as "[l]acking aim or method, purposeless, not uniform, applies to that which occurs or is done without careful choice, aim, or plan." Webster's New World College Dictionary 1187 (4th ed 2001). This is clearly in contrast to *reasonable suspicion* that Black's Law Dictionary defines as "[a] particularized and objective basis, supported by specific and articulable facts, for suspecting a person of criminal activity." *Id.* at 1273 (7th ed 1999). Under the provisions of the Agreement, requiring the parole agent to show reasonable suspicion before being able to request a random UA would create an inconsistent result.

[¶16.] The document in dispute appears to be one that is used on a statewide basis by the Department of Corrections. Thus, it can be tailored to meet the needs of an individual parolee as determined by his or her parole agent. Since Pursley had a history of problems with drugs it is logical to conclude that he would have to agree to random UAs and PBTs as special conditions of his parole. Conversely, a professional identity thief with no history of addiction problems would logically not have the special conditions. The circuit court, consistent with Pursley's assertion, construed the provisions of paragraph 13e as de facto general provisions based on Robb's testimony that in eight years as a parole agent he had never seen an

agreement that did not include random UA and PBT provisions. While this individual agent may consider random testing uniformly appropriate based on his type of caseload that does not make it a uniform statewide condition of parole for all parolees. The circuit court's interpretation also overlooks Robb's further testimony that the incidence of alcohol and drug-related criminal offenders is "very high."

[¶17.] Not only was the document not ambiguous, Pursley conceded the same on both occasions that he signed the agreement—first, while yet incarcerated and then again the day he was paroled. Immediately above his signature are the words: "I have read or have had read to me, fully understand and agree to abide by the conditions of supervision."

[¶18.] For all the forgoing reasons we reverse.[5]

[¶19.] SABERS, KONENKAMP, ZINTER, and MEIERHENRY, Justices, concur.

---

5.    Since we hold that the Agreement did not require a showing of reasonable suspicion before Pursley could be requested to submit to a UA, we do not need to address the second issue raised by the State on appeal.